## Harry Madison, Executor, v. Frank Cabalek.

1. Agent—*Loan Broker Negotiating Loans upon Real Estate.*—It would be a very dangerous rule to hold that a loan broker, engaged in negotiating loans upon real estate, should be regarded as the general collecting agent of a lender from whom he has obtained money for a client, merely because other borrowers had frequently before obtained money from him and collected interest coupons in certain instances.

2. Same—*Authority to Loan is Not Authority to Collect.*—Authority of an agent to loan the money of his principal and take security for its payment does not authorize him to collect his principal's money so loaned.

3. Same—*Authority to Receive Interest on a Negotiable Instrument.*—An agent intrusted with authority to receive interest on a negotiable instrument, or the principal when due, is not authorized to receive the principal before due.

4. Negotiable Paper—*Duty of Maker at Time of Payment.*—With reference to negotiable paper the maker must, at his peril, ascertain at the time of payment whether the person to whom he makes payment is the owner of the paper.

Assumpsit, on a promissory note. Appeal from the Circuit Court of Douglas County; the Hon. William G. Cochran, Judge, presiding. Heard in this court at the May term, 1899. Reversed and remanded. Opinion filed December 13, 1899.

T. W. Roberts and I. A. Buckingham, attorneys for appellant.

John H. Chadwick and Eckhart & Moore, attorneys for appellee.

Mr. Justice Harker delivered the opinion of the court.

This was a suit against appellee on a promissory note for $1,200 executed by him to Oscar H. Sloan and by Sloan indorsed and turned over to appellant's testate, John M. Madison. The defense of payment was made and it prevailed in a trial by jury. It is urged for grounds of reversal that the verdict is against the evidence and that the court gave improper instructions.

From the evidence contained in the record, it appears

that Patrick C. Sloan was a loan broker at Tuscola, Illinois, engaged in negotiating loans upon real estate security. Appellee applied to him for a loan of $1,200, and on February 1, 1895, executed a note for that amount and interest at the rate of seven per cent, payable in three years to Oscar H. Sloan, and secured by mortgage on certain farm lands in Douglas county. Attached to the note were three interest-bearing coupons for $84 each. After the notes were executed, Oscar Sloan indorsed them in blank, and they were in that condition turned over by Patrick Sloan to John M. Madison, from whom the $1,200 was obtained to make the loan. The amount of the first coupon when due was paid by appellee to Patrick Sloan, who paid it over to Madison, took up the coupon and surrendered it to appellee. A short time afterward appellee secured through Sloan a loan of $3,400, giving mortgage on the same land. There was deducted from the $3,400 the amount due Madison on the $1,200 loan and the balance paid to appellee. Appellee, at the time, asked Sloan for the notes and mortgage which had been given for the $1,200 loan. Sloan informed him that he did not have them but would get them. None of the $1,200 was ever paid to Madison and no information was ever given him about the new loan.

On the 13th of July, 1896, Madison died, leaving a will, and into the hands of his executor came the $1,200 note and the two remaining coupons. On the 1st of February, 1897, Sloan paid the second coupon. In March of that year he failed, and is now insolvent.

It is contended that Patrick C. Sloan was the agent of John M. Madison in making the $1,200 loan and in receiving the amount due on it when it was deducted from the $3,400 loan. The decision of the case hinges entirely upon that contention. The evidence shows that it was the custom of Sloan when a borrower made application to him for a loan to make the note and mortgage payable to his brother, Oscar H. Sloan, or a brother-in-law, and when a party was found willing to furnish the money, the note was

indorsed by the payee and turned over to the lender. In that way numerous loans were secured from Madison and other parties. The evidence also shows that in many instances he would receive the money due on interest coupons, pay it over to the lender, receive the coupon in return and surrender it to the borrower. In most cases, the name of the lender was not disclosed to the borrower. It does not appear that the name of Madison was disclosed to appellee either at the time of receiving the $1,200 or at the time of deducting it from the $3,400 loan. These are the facts on which the appellee founds his contention that Sloan was the agent of Madison.

Opposed to the contention of appellee, there is the testimony of Sloan that he was acting for appellee in negotiating the loan for $1,200. Of course, his testimony on that point should have but little weight if it is apparent, from other evidence, that he was either a general or special agent of Madison. There is no evidence whatever that he was a special agent of Madison to make that particular loan; but it is insisted that the course of dealing between them was such as to make him Madison's general agent to make and collect loans. In our opinion it would be a very dangerous rule to hold that a loan broker, engaged in negotiating loans upon real estate, should be regarded as the general collecting agent of a lender from whom he has obtained money for a client merely because he frequently before, for other borrowers, had obtained money from him and collected interest coupons in certain instances.

Had Sloan been the general agent of Madison with authority to loan his money and take real estate security, or his special agent to make this particular loan, it does not follow that he was authorized to collect. Authority to an agent to loan the money of his principal and take security for its payment does not authorize the agent to collect his principal's money so loaned. Cooley v. Willard, 34 Ill. 68; Stiger et al. v. Bent, 111 Ill. 328.

The general rule with reference to negotiable paper is that the maker must, at his peril, ascertain at the time of pay-

ment whether the person to whom he makes payment is the owner of the paper. In this case Oscar H. Sloan was made the payee. By inquiring of him, appellee would have ascertained whether he was the holder of the note, and if not, who was. He did not take that precaution, but paid to the man who had negotiated the loan, and who informed appellee at the time, that he did not have the note. It is a great hardship on appellee to be compelled to pay the note twice, but it is attributable solely to his own negligence and the rascality of the man to whom he paid the money and trusted to procure the note for him.

The note was paid to Sloan nearly two years before maturity. The fact that he had received payment of overdue interest coupons did not justify appellee in paying the principal note before maturity. He would not have been justified in so paying it even if Sloan had direct authority from Madison to receive interest money when due. An agent intrusted with authority to receive interest on a negotiable instrument, or the principal when due, is not authorized to receive the principal before due. Thompson et al. v. Elliott, 73 Ill. 221; Thornton v. Lawther, 169 Ill. 229; Mechem on Agency, Sec. 380; Smith et al. v. Hall, 19 Ill. App. 17.

Of course, if the evidence in any particular case should show that the agent had full authority from his principal to make loans on his own judgment, to extend time of payment, determine the lengths of loans, collect the principal when due and re-loan it, pay taxes, and to take general supervision of his principal's business without limitation in writing, then the implication could be indulged that he had authority to receive payment of loans before due. No such case is presented by the evidence here, however.

We do not care to discuss in detail the instructions complained of by appellant. It is sufficient to say that they are contrary to our views of the law as we have expressed them in this opinion. The judgment will be reversed because of error in giving them and because the finding of the jury is against the law and evidence. Judgment reversed and remanded.